# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERRY COLLINS, | ) |
| | ) No. 17 C 3589 |
| Plaintiff, | ) |
| | ) Magistrate Judge M. David Weisman |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Collins appeals the Commissioner's decision denying his application for Title XVI supplemental security income. For the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further proceedings.

### Background

Plaintiff filed an application for supplemental security income on December 5, 2012, alleging a disability onset date of August 10, 2009 due to sarcoidosis,[1] depression, Hepatitis C, liver issues, anxiety, and blurred vision in the left eye. (R. 90–91.) His application was denied initially on May 2, 2013, and upon reconsideration on December 5, 2013. (R. 103, 120.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 15, 2015. (R. 38.) On December 28, 2015, the ALJ issued a decision denying Plaintiff's application. (R. 16–32.) The Appeals Council denied review (R. 1–3), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[1] Sarcoidosis is a "chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles." *See Dorland's Illustrated Medical Dictionary* at 1668 (32d ed. 2012).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of December 5, 2012. (R. 18.) At step two, the ALJ determined that Plaintiff had the severe impairments of "[s]arcoidosis, liver disease, visual impairment in the left eye,

degenerative joint disease of the left knee, status-post internal fixation, depression and substance abuse." (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 19.) At step four, the ALJ found that Plaintiff had the RFC to perform light work with additional restrictions. (R. 21.) At step five, the ALJ determined that although Plaintiff could not perform any past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 30–31.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 31–32.)

**A. RFC Assessment**

Plaintiff contests the ALJ's RFC assessment, which states in relevant part that Plaintiff:

> . . . . [I]s limited to performing simple, routine, repetitive unskilled work. He is able to understand remember and carry out short simple instructions, and is able to maintain attention and concentration for extended periods for that type of work. [Plaintiff] can sustain an ordinary routine without special supervision. He can make simple work-related decisions and use judgment. He is able to briefly and occasionally interact with the general public. [Plaintiff] can accept instructions and respond appropriately to criticism from supervisors occasionally and could occasionally get along with co-workers and interact with them. [Plaintiff] has the ability to respond appropriately to routine changes that occur no more than occasionally in the performance of this short and simple type of instructions and tasks.

(R. 21.) Plaintiff argues that this RFC does not account for the restrictions imposed by the agency medical reviewers, whose opinions the ALJ gave great weight. (*See* R. 29.) The Court disagrees. The agency reviewers noted that Plaintiff has the "capacity to understand, remember, carry out and sustain performance of 1-3 step tasks, complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." (R. 100, 117.) Though the ALJ's RFC does not repeat

verbatim the agency reviewers' RFC, the former sufficiently incorporates the limitations of the latter to withstand Plaintiff's challenge. (R. 21.)

Plaintiff also argues that the ALJ's RFC does not account for the "moderate" limitation the ALJ found in Plaintiff's concentration, persistence and pace. (*See* R. 20.) The Court agrees. As the Seventh Circuit has stated, "'simple, repetitive tasks'" may include "positions that present significant problems of concentration, persistence and pace" because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). As a result, the court held, the ALJ's failure to include a moderate limitation in concentration, persistence and pace in the hypothetical presented to the vocational expert ("VE") was not cured by the ALJ's instruction that the claimant was limited to simple, repetitive tasks. *Id.* at 620–21. As in *O'Connor-Spinner*, limiting the RFC in this case to simple, repetitive tasks does not adequately account for Plaintiff's limitation in concentration, persistence and pace.

Plaintiff further contends that the record does not support the ALJ's conclusion about Plaintiff's ability to function socially. The ALJ stated:

> In social functioning, the claimant has moderate difficulties. In a January 2013 Function Report, the claimant reported that his social activities consisted of sitting and talking with his sister and attending church. He alleged that he always believes that someone is trying to kill him and that he did not go out because he did not get along with people. At the November 2013 consultative psychological examination, the claimant reported to Dr. Walsh that he had no friends and did not trust anyone. A mental status examination showed that he made good eye contact and that his speech was relevant and coherent, although very slow and hesitant. Treatment records related to the claimant's medical treatment regularly reported that the claimant was cooperative. Based on the longitudinal record, I find the claimant is moderately limited in social functioning.

(R. 20) (citations omitted). As an initial matter, it is not clear how the evidence the ALJ explicitly credited – Plaintiff's reports that he does not go out, does not get along with people, has no friends, has no social life, and believes someone is trying to kill him – demonstrates social functioning that is only moderately impaired.

Moreover, even if it did, there is other evidence the ALJ failed to mention that casts doubt on the moderate limitation, including: (1) Plaintiff's report that he only sits and talks with his sister "every to [sic] or three days," only attends church twice a month and is "scare [sic] to be around a lot of people" (R. 296, 298); (2) Plaintiff's sister's report that Plaintiff thinks other people are "out to get him," he usually ignores people when they tell him what to do, and he isolates himself from other people "lots of time" (R. 398); (3) the report of consulting examiner Karamitis that Plaintiff was "at times defiant, angry and hostile," his performance on the mental status [exam] "is somewhat typical of a person in the grip of depression, anger and frustration," and his "mental health history is remarkable for a history of assaultive behavior and being arrested three times for disorderly" (R. 408–10); and (4) an October 2014 treatment note that states Plaintiff has for years heard a voice named "Mickey" that tells him to hurt himself and others (R. 630). In short, the Court agrees that the ALJ's finding that Plaintiff is moderately limited in social functioning is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Next, Plaintiff challenges the ALJ's conclusion that Plaintiff has the physical ability to perform work at the light exertional level (*see* R. 21), which requires a "good deal of walking or standing." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983); *see Dictionary of Occupational Titles*, App'x C, § IV Physical Demands-Strength Rating, *available at*

https://occupationalinfo.org/appendxc_1.html#STRENGTH (last visited Mar. 30, 2018) (stating that light work requires "walking or standing to a significant degree"). Plaintiff contends that the record clearly demonstrates that he cannot walk or stand for any length of time because of, among other things, fatigue and left leg pain.

The ALJ acknowledged Plaintiff's complaints of fatigue and left leg pain but found that there was little medical evidence to support them. However, Plaintiff attributes his extreme fatigue to advanced liver disease, which as the ALJ acknowledged, is well-established by the record. (R. 23-24; *see id.* 550 (consultative examiner noting that Plaintiff has "hepatitis C [and] liver problems"), 668 (October 2, 2014 treatment note indicating that Plaintiff has "severe liver disease"), 670 (May 2013 liver biopsy results showing that Plaintiff has "chronic hepatitis C, moderately active (grade 3 of 4) with cirrhosis (stage 4 of 4))."). Moreover, the record shows that Plaintiff had "a slow limping gait from left hip and knee pain" and 120 degrees of flexion of the left knee at a March 2013 consultative exam (R. 393, 400), 70 degrees of left knee flexion at an October 23, 2013 consultative exam (R. 551), degenerative changes in his left knee as evidenced by an October 2014 x-ray (R. 685), and by August 2015, was using a cane to walk (R. 743). The ALJ states that the RFC accommodates Plaintiff's fatigue and leg pain by limiting him to light work (R. 24-25), but he does not explain how the demands of light work are consistent with Plaintiff's demonstrated impairments, an error that requires remand. *See Villano*, 556 F.3d at 562 (ALJ "must build a logical bridge from evidence to conclusion").

**B. Assessment of Plaintiff's Credibility**[2]

In addition, Plaintiff contends that the ALJ improperly assessed the credibility of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. The Court agrees. Social Security regulations instruct the ALJ to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 96-7p; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("The ALJ must . . . support credibility findings with evidence in the record.").

First, the ALJ improperly gave weight to the one-time, isolated incident of Plaintiff participating in a basketball game as evidence that his daily activities are greater than he claims. (R. 29); *see, e.g.*, *Scrogham v. Calvin*, 765 F.3d 685, 700 (7th Cir. 2014) (claimant rarely driving, mowing the lawn, and performing yardwork was not evidence that he could participate in gainful activity). Moreover, the fact that Plaintiff fractured his shoulder during this basketball game (R. 77, 578) seems to support Plaintiff's assertion that he cannot perform moderate physical activity— at least not without harming himself. Next, the ALJ leaps from identifying minor inconsistencies about Plaintiff's educational level and substance abuse history to concluding that Plaintiff's statements about his symptoms are "not entirely credible." (R. 28.); *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (holding that the inconsistences the ALJ relied on were minor and immaterial). Any inconsistent statements Plaintiff gave about his educational level do not rise to the level of material inconsistency. The ALJ also failed to consider whether Plaintiff may have given conflicting statements about his substance abuse history because he had concerns about

---

[2] The Court notes that Defendant has issued new guidance for evaluating symptoms in disability claims, which "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at * 1 (Mar. 16, 2016).

admitting substance abuse. *See McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010) (explaining that the ALJ should consider why the claimant might not have been forthcoming about her substance abuse issues before considering it as evidence of lack of candor). Regardless of whether the record contains minor inconsistent statements about Plaintiff's education and drug history, the ALJ failed to adequately evaluate Plaintiff's subjective complaints about limitations with standing and walking in light of the medical evidence, as the regulations require.

### C. Assessment of Third-Party Statements

Plaintiff next asserts, and the Court agrees, that the ALJ failed to properly evaluate Plaintiff's sister's third-party reports. When evaluating the usefulness of a nonmedical third-party report, the ALJ must make clear what parts of the statements he believes or does not believe, and why he chose to discredit certain parts. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Here, the ALJ provided flawed reasoning for why he gave "little weight" to the third-party reports submitted by Plaintiff's sister. (R. 30.) The ALJ pointed to the possibility that the sister's reports were "potentially influenced by loyalties of family" as a reason for discrediting them. (R. 30.) The Seventh Circuit, however, has cautioned against reducing the weight of familial third-party reports merely because the possibility for bias exists. *See, e.g.*, *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). Indeed, the rules expressly contemplate the inclusion of familial reports as non-medical evidence. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

In a similar vein, the ALJ improperly gave little weight to the third-party reports because they were "lay opinions based on casual observation, rather than objective medical examination and testing." (R. at 30.) While it is appropriate for the ALJ to give greater weight to medical opinions, he found that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 28.) Once making this finding, the ALJ should have used the statements

8

of Plaintiff's sister – a person with whom he has a close personal relationship – as non-medical evidence that "show[s] the severity of the [claimant's impairment(s) and how it affects his ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). To the extent that the sister's reports contradict a medical evaluator's opinion, the ALJ should have explained any inconsistency. The ALJ must articulate a logical bridge from the evidence of the record to his conclusion with sufficient clarity to allow for meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Specifically, rather than dismissively state that the reports are "inconsistent with each other," (R. 30), the ALJ should have articulated which "statements [within the sister's reports] he believes or does not believe, and why he chose to discredit certain parts." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). A failure to do so constitutes reversible error.[3]

## Conclusion

For the reasons set forth above, the Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.         ENTERED:   July 10, 2018

_____
**M. David Weisman**
**United States Magistrate Judge**

---

[3] The Court notes that contrary to the ALJ's assertion, the parts of the sister's statements to which he cites read consistently with each other. The ALJ stated that in January 2013, the sister "reported that the claimant was unable to work because he was very ill due to liver disease which was worsening. She reported [he] sometimes takes care of his persona [sic] needs, cooks and engages in social activities. She assessed he could walk one block and needing [sic] to rest 10 minutes . . . " (R. 29.) The ALJ then explained that in September 2013, Plaintiff's sister "also stated that the claimant's liver condition limited his ability to work because he moved around very slowly and was unable to function at times. [She] reported that the claimant had no problems managing his personal care. She also stated that he went out every day and got around walking and using public transportation, which he could handle alone." (R. 30.) These cited portions of the sister's reports are consistent with each other: both demonstrate that Plaintiff's liver condition prevents him from working and both describe a man whose symptoms cause him to move slowly.